# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1622V
UNPUBLISHED

| | |
|---|---|
| MICHAEL FRANCESCO,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: October 15, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Guillain-Barre Syndrome<br>(GBS) |

*Ronald Craig Homer, Conway, Homer, P.C., Boston, MA,* for petitioner.

*Terrence Kevin Mangan, Jr., U.S. Department of Justice, Washington, DC,* for respondent.

## DECISION AWARDING DAMAGES[1]

On October 19, 2018, Michael Francesco filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered Guillain Barré Syndrome (GBS) resulting from the administration of an influenza ("flu") vaccination on September 22, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to an award of damages in the amount $**171,248.72, representing compensation in the amount of** $**165,000.00 for actual pain and suffering,** $**5,222.61 for past unreimbursable expenses, and** $**1,026.11 in lost wages**.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.    **Relevant Procedural History**

As noted, this case was initiated in 2018. Respondent filed a Rule 4 Report conceding entitlement on April 14, 2020. ECF 33. Two days later, on April 16, 2020, a Ruling on Entitlement was issued. ECF 34. At that time, the parties had already previously informed me that they had "disparate valuation of Petitioner's damages" and "[would] require the Court's involvement" in resolving this issue. ECF 31.

After giving the parties an opportunity to file written briefs, I scheduled this matter for an expedited hearing and ruling based upon all the evidence filed to date and the parties' briefing. ECF 46. The hearing was held on October 2, 2020.[3] Petitioner requests that I award him $225,000.00 for past and future pain and suffering. ECF 39 and ECF 43. Respondent proposes that I award the lesser amount of $115,000.00. ECF 42. The parties do not dispute that $5,222.61 in past unreimbursable expenses and $1,026.11 in lost wages should be awarded.

II.   **Legal Standard**

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed.

---

[3] An official recording of the proceeding was taken by court reporter. A link to instructions on the court's website detailing how to order a certified transcript or audio recording of the proceeding can be found in the Minute Entry dated October 2, 2020. *See also* www.uscfc.uscourts.gov/trans (last visited October 14, 2020).

Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Prior pain and suffering awards in comparable cases also bear on the findings reached herein. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III. Appropriate Compensation in this Case

In this case, awareness of the injury is not disputed. The record reflects that at all times, Petitioner was a competent adult with no impairments that would impact his awareness of his injury. Therefore, I analyze principally the severity and duration of Petitioner's injury.

In performing this analysis, I have reviewed the record as a whole to include the medical records and affidavits filed and all assertions made by the parties in written documents and at the expedited hearing held on October 2, 2020. I also considered prior awards for pain and suffering in both SPU and non-SPU GBS cases and rely upon my experience in adjudicating those cases. However, I ultimately base my determination on the circumstances of this case.

Here, the record shows that Petitioner, an engineer, began to experience tingling in his fingers and toes and weakness in his knees three days after receiving the flu vaccine on September 22, 2017. Ex 10 at 1-2. He presented to his primary care physician (PCP) on September 26, 2017, and physical examination revealed decreased reflexes, decreased lower extremity strength, and ataxic gait. Ex 9 at 27. He was referred to the emergency room for suspected GBS. *Id*. at 28. Petitioner was thereafter admitted to the hospital and began a five-day course of IVIG. Ex 2 at 1160-1166. After an eight-day hospitalization, Petitioner was transferred to inpatient rehabilitation. Ex 2 at 1001-1004. He was discharged after 22 days of treatment, on October 25, 2017. *Id*. at 131.

At his first follow-up visit with his PCP, on October 27, 2017, Petitioner reported continued symptoms in his lower extremities (pain, tingling & burning sensation) but his "hands and arms are just about fully back to normal." Ex 9 at 7-9. Petitioner also began physical therapy (PT) in late October, and at his initial evaluation he reported he was still having pain but was independent with activities of daily living. Ex 2 at 16-17. He continued

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

3

to use a wheelchair at home but was able to stand and walk 300 feet with a walker and ten feet unassisted. *Id*. and Ex 9 at 7-9. Petitioner was noted to be "highly motivated" and made "rather rapid progress" during PT. Ex 2 at 30-87. He was discharged from PT after approximately two months. *Id*. at 12-13.

On April 3, 2018, Petitioner returned to his PCP, at which time he reported continuing easy fatigue and mild pain/tingling, but he also had discontinued all medications that he had previously been prescribed to treat his GBS and related symptoms. Ex 9 at 4-5. As of September 7, 2018, Petitioner stated that his only symptom was numbness/tingling in his toes "at the end of the week when he is more stressed out" but that "he feels like his strength is better than it was before he had [GBS]." *Id*. at 1-2. Subsequent records show that Petitioner remained stable after this visit. Ex 12 at 4-5.

As I informed the parties during the expedited hearing, the question in this case is not whether Mr. Francesco is entitled to *any* compensation for his pain and suffering, but rather *what* amount of compensation is justified, based upon the facts of the case. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties (acknowledging that in this case, the parties' respective positions reasonably "frame" high and low potential awards), each petitioner deserves an examination of the specific facts in his or her case. Thus, while amounts ultimately awarded may end up falling somewhere in the range between the awards proposed by both parties, this result flows from a specific analysis of Mr. Francesco's personal circumstances.

In his brief, Petitioner references four prior GBS damages decisions[5] to support his proposed award of $225,000.00. The petitioners in all four of these cases were awarded approximately $180,000.00 in pain and suffering, but Mr. Francesco proposes a higher award, arguing that his total hospitalization (inpatient and rehabilitation) of 31 days was significantly longer than that in the four other cases, which ranged from 5-11 days. Petitioner also alleges that because he was hospitalized during a management change at his office, he missed out on establishing a relationship with the new leadership. He estimates that if he had been in the office, he would have been awarded a bonus of approximately $30,000.00.[6] Finally, Petitioner argues that his inability to receive future flu shots "puts him at substantial risk, especially as he continues to age." ECF 39.

Respondent counters that Petitioner should be awarded $115,000.00 in pain and suffering. Respondent concedes that the duration of Petitioner's inpatient hospitalization

---

[5] *Johnson v. Sec'y of Health & Human Servs.*, No. 16-135V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July, 20, 2018); *Dillenbeck v. Sec'y of Health & Human Servs.*, No. 17-428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019); *Fedewa v. Sec'y of Health & Human Servs.*, No. 17-1808V, 2020 WL 1915138 (Fed. Cl. Spec. Mstr. March 26, 2020); *Presley v. Sec'y of Health & Human Servs.*, No. 17-1888V, 2020 WL 1898856 (Fed. Cl. Spec. Mstr. March 23, 2020).

[6] Petitioner argues that the court should consider this loss of "renewal stock units" as part of his pain and suffering rather than lost wages. ECF 39 at 17. However, if this sum were guaranteed, it would appropriately have been considered as a component of the latter, and speculative amounts cannot be the basis for lost past or future wages. Regardless, I have given this factor some minor weight in calculating pain and suffering in this case.

and rehabilitation was significantly longer than the stays in the four referenced cases. However, Respondent argues that Petitioner's recovery was "significantly faster and more complete" than those other petitioners. ECF 42.

After reviewing the record in this case and considering the parties' arguments during the hearing, I conclude that Petitioner's condition, while serious, was on the mild end of severity in GBS cases.[7] As pointed out by Respondent, while Petitioner's initial treatment was extensive, he had a straightforward recovery during which most, if not all, of his symptoms resolved within a year of onset.[8] In contrast, the petitioner in *Dillenbeck* "did not feel like she had returned to a baseline level of health" even four years after vaccination. *Dillenbeck* 2019 WL 4072069, at *2. In *Presley*, the petitioner was largely homebound and unable to care for himself for four months after he was released from the hospital. *Presley* 2020 WL 1898856, at *3-4. He also continued to have weakness and numbness for more than 3 ½ years. *Id*. at *7.

I acknowledge that Petitioner did have significant symptoms, which clearly caused psychological distress, as described in his affidavit. Ex 10. Petitioner also exerted considerable effort in making a successful recovery, as reflected in his inpatient rehabilitation and physical therapy records, which should be applauded. However, these factors do not justify an award of the magnitude requested by Petitioner. For example, in *Devlin*,[9] the petitioner experienced significant anxiety because it took over a month for him to receive his GBS diagnosis after the initial onset of his symptoms. In addition, the petitioner in *Fedewa* (who was awarded $180,000.00 in pain and suffering) continued to suffer from moderately severe depression and persistent difficulty with social activities "years" after his diagnosis. *Fedewa* 2020 WL 1915138, at *6, 8-9.

In contrast, the record demonstrates that Mr. Francesco continued to engage in social activities even during his recovery. For example, he attended a six-day self-help convention at the beginning of November 2017 (less than one month after his discharge from inpatient rehabilitation) during which he "easily walked over a mile and also walked over some hot coals and danced." Ex 2 at 39. He also returned to work part-time later that same month, working six hours per day. *Id* at 45 and Ex 9 at 4. As of September 7, 2018, less than one year after the onset of his symptoms, Petitioner reported that he had returned to playing ice hockey. Ex 9 at 4-5. Petitioner's recovery can be compared to that in *W. B.*,[10] where the petitioner returned to part-time work approximately one month after

---

[7] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through July 31, 2020 reveals a median award amount of $165,000.00. Awards have typically ranged from $125,000.00 to $270,000.00, representing cases between the first and third quartiles.

[8] Petitioner argues in his responsive brief that his occasional tingling in his feet and toes when he is fatigued should be considered "significant." However, Petitioner's own medical records reflect that this residual symptom was not causing distress.

[9] *Devlin v. Sec'y of Health & Human Servs.*, No. 19-191V (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $180,000.00 in past pain and suffering).

[10] *W. B. v. Sec'y of Health & Human Servs.*, No. 18-1634V (Fed. Cl. Spec. Mstr. Aug. 7, 2020) (awarding $155,000.00 for actual pain and suffering).

the onset of his symptoms and was largely asymptomatic within a year.

In sum, when balancing Petitioner's extensive initial treatment with his significant and uncomplicated recovery, and considering the arguments presented by both parties at the hearing, a review of the relevant caselaw, and the written record, I find that $165,000.00 in compensation for actual pain and suffering is reasonable in this case. This sum exceeds in reasonable amount what Respondent proposed, but is properly less than what some of the other petitioners referenced herein received for comparably worse circumstances.

### IV. Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $165,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[11] I also find that Petitioner is entitled to $5,222.61 in actual unreimbursable expenses and $1,026.11 in lost wages.**

Based on the record as a whole and arguments of the parties, **I award Petitioner a lump sum payment of $171,248.72 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[12]

**IT IS SO ORDERED.**

                                               <u>s/Brian H. Corcoran</u>
                                               Brian H. Corcoran
                                               Chief Special Master

---

[11] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Human Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Human Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.